# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, | ) ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 2:15-cv-1876-RWS-RSP |
| | ) |
| FORD MOTOR COMPANY, | ) |
| Defendant. | ) |

**FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 35 U.S.C § 101**

Defendant Ford Motor Company ("Ford") submits this reply in support of its motion to dismiss Plaintiff Rothschild Connected Devices Innovations, LLC's ("Rothschild" or "Plaintiff") complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101. Because Plaintiff's response substantially mirrors Plaintiff's response to the defendants' similar § 101 motions in C.A. No. 2:15-cv-01877-JRG-RSP (the "*Honda* case"), Ford's reply herein substantially mirrors the reply filed by the defendants in the *Honda* case. As stated in Ford's opening brief, in the event the § 101 motion is granted in the *Honda* case, it may be unnecessary for the Court to resolve the instant § 101 motion in this case.

## I.      INTRODUCTION

Claim 1 of the '090 Patent does not meet the requirements for patent eligibility under 35 U.S.C. § 101 set out in *Alice Corp. Pty. v. CLS Bank International*, 134 S. Ct. 2347 (2014) ("*Alice*"). In its response, Plaintiff argues that claim 1 is non-abstract and contains meaningful limitations, but it relies entirely on bare conclusory statements and arguments—including those that have already been considered and rejected by this and other courts. Indeed, similar arguments were rejected when made by Rothschild Location Technologies, LLC ("RLT"), another litigation-driven entity of Mr. Rothschild.[1] Plaintiff's remaining arguments are also unavailing: namely, Plaintiff has raised no legitimate claim construction disputes and Defendant is not attempting to attack the "novelty" of claim 1 under § 102. Claim 1 recites nothing more than an abstract idea and contains no meaningful limitations that transform it into significantly

---

[1] *See Rothschild Location Techs., LLC v. Geotab USA, Inc.*, Case No. 6:15-cv-00682-RWS-JDL, Dkt. No. 93 ("Report and Recommendation of United States Magistrate Judge") (E.D. Tex. Jan. 4, 2016) (Love, J.) (the "*RLT* case") (holding that the claims were "directed to patent-ineligible subject matter and therefore invalid under 35 U.S.C. § 101"). Though styled as a "Report and Recommendation" of the Magistrate Judge, certain defendants in the consolidated *RLT* case consented to the Honorable John D. Love conducting all proceedings (including a jury or nonjury trial) and ordering entry of a final judgment, so the finding as to those defendants does not need to be confirmed by Judge Schroeder in that case. RLT objected to the report and recommendation and has requested an oral hearing. *RLT* case, Dkt. Nos. 101, 116.

more than the abstract idea itself. Claim 1, therefore, is invalid under § 101 and Defendant's motion should be granted.

## II. ARGUMENT

### A. Plaintiff Fails To Articulate How Claim 1 Is Non-Abstract

Step one of the test for patentability outlined in *Alice* asks the Court to consider whether the claims at issue cover ineligible subject matter, such as an abstract idea. *Alice*, 134 S. Ct. at 2355. The abstract idea at the heart of the '090 Patent's claim 1 is product customization. *See* '090 Patent at 8:66-67 (claiming "A system for customizing a product according to a user's preferences…"); Def.'s Mot. at 5-6. Plaintiff's response does not establish otherwise. First, Plaintiff never denies that product customization is an abstract concept. Instead, Plaintiff argues that Defendant has oversimplified claim 1 by boiling it down to those two words and posits that the purported invention "deals not so much with product customization," as with "receiving, storing, and transmitting specific information over a computer based network." Pl.'s Resp. at 9. As an initial matter, "product customization" is an entirely fair summation of a claim that recites "[a] system for customizing a product according to a user's preferences."[2] Moreover, Plaintiff cannot credibly argue that "customizing a product according to a user's preferences" is not a "pre-computer business practice." *See* Pl.'s Resp. at 8; '090 Patent at 8:66-67. Indeed, the abstract idea of product customization is so basic and fundamental that it is difficult to imagine

---

[2] In fact, Defendant's characterization takes a generous view of claim 1. Unlike claim 13, which covers a beverage dispenser and recites "a controller configured to actuate . . . the mixing chamber based on user generated beverage product preferences," claim 1 does not even cover the actual customization of the user's product. '090 Patent at 10:20-23. According to the system of claim 1, a product receives a user's identity and preferences via a completely generic "communication module . . . in communication with [a] remote server" that has stored the user's preferences. *Id.* at 9:3-4. Claim 1 does not recite what happens after the user's preferences are transmitted, and it does not cover how, if at all, the product itself is actually configured according to those preferences.

its earliest conception. The abstract nature of claim 1 is confirmed when considering that remembering (*i.e.*, storing) and communicating (*i.e.*, transmitting) a user's product preferences are tasks that can be (and frequently are) performed with the human mind and pencil and paper alone. *See, e.g., CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011).

Second, Plaintiff's own articulation of claim 1—a system for "receiving, storing, and transmitting specific information over a computer based network"—does not alter the abstract idea at its core. Plaintiff contends that the allegedly "patent-eligible" computer components recited in claim 1 perform an "[essential] function" and are "necessarily require[d]" by the claim, and that these "tangible components . . . [of] a computer system, a communication network, a product, and a communication module within the product" necessarily render the claim non-abstract. Pl.'s Resp. at 2, 8. But Plaintiff's argument misapplie the applicable law. At *Alice* step one, the Court determines only whether there is an abstract idea present—not whether there is a patent-eligible application of the abstract idea that transforms it into something more. *See Alice*, 134 S. Ct. at 2355. Courts do not find an abstract idea lacking simply because a claim is "clothed in computer language." *See CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1292 (Fed. Cir. 2013) (Lourie, J., plurality). Thus, Plaintiff's argument only applies to *Alice* step two. Moreover, as further described below in step two, these same computer limitations are also insufficient to render the underlying abstract idea patentable. The Supreme Court has long recognized that a patent is not eligible for protection simply because its claims require a computer implementation. *See, e.g., Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972) (holding that the claimed method, comprising a computer- implemented mathematical algorithm, was invalid under § 101). Further, the Federal Circuit has held that reciting routine, computer-implemented tasks is not sufficient to

3

confer patent eligibility. *See, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) ("Transfer of content between computers is merely what computers do and does not change the analysis."). Generic computer implementations did not pass muster even under the old machine-or-transformation test that Plaintiff cites.[3]

Third, with respect to preemption, Plaintiff misstates Defendant's motion. Defendant does not argue, as Plaintiff claims, that the '090 Patent preempts all product customization. Nevertheless, claim 1 does threaten to preempt almost any product customization that takes place over the Internet (or any other network), especially in view of Plaintiff's apparent claim construction. *See* Def.'s Mot. at 6-7. This preemption is relevant to the § 101 analysis, as is Plaintiff's assertion of claim 1 against a vast array of "products" across many different industries. *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010) (finding relevant to patentability whether a patent "would pre-empt use of [its] approach in all fields"); Def.'s Mot. at 6.

### B. Plaintiff Fails To Identify Any Inventive Concept In Claim 1

Step two of the *Alice* test entails the search for an "inventive concept." *Alice,* 134 S. Ct. at 2355. At this step, the court considers whether the abstract idea identified in step one is confined to a patent-eligible application through the additional elements of the claim. To make the claim patent-eligible, the additional elements must transform the claim into "significantly more than the [abstract idea] itself." *Id.* Plaintiff cannot articulate any limitations of claim 1 that transform it in this manner.

---

[3] *See, e.g.*, *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012); *Dealertrack v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *Fort Props., Inc. v. Am. Master Lease, LLC*, 671 F.3d 1317, 1323-24 (Fed. Cir. 2012). *See also*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (recognizing the Supreme Court's finding in *Mayo* that "satisfying the machine-or-transformation test, by itself, is not sufficient to render a claim patent-eligible") (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012)).

Plaintiff calls the elements of claim 1 "meaningful, non-generic and inventive," but merely labeling them as such does not make them so. Pl.'s Resp. at 11. Moreover, the weight of authority confirms that generic computer components and functions, like those recited in claim 1, cannot bring the claim within the realm of patent-eligible subject matter. *See, e.g.*, Def's. Mot. at 8 (collecting cases). Significantly, Plaintiff cannot point to a single case with analogous claims in which eligibility was upheld.[4] Plaintiff's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) is also misplaced.

The *DDR* patent was directed towards altering the "conventional functioning of Internet hyperlink protocol" to address the problem of hyperlinks routing website visitors away from a host website to a third party merchant. *DDR Holdings*, 773 F.3d at 1257-58. By using a system to generate a composite web page that combines elements of the host site and the third-party merchant, the patented invention allowed websites to better retain visitors and therefore claimed a solution "necessarily rooted in computer technology to overcome a problem specifically arising

---

[4] The various non-precedential or non-binding cases cited by Plaintiff for the proposition that claim construction should be performed first are also distinguishable on the merits. *See* Pl.'s Resp. at 4; *Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Nos. 11-00189, 13-00720, 2014 WL 7012391, at *4 (C.D. Cal. Nov. 12, 2014) (upholding claims in part because defendants "cite[d] no authority for the proposition that the abstract idea in step one of the *Alice/Mayo* test can be something that the claimed invention might be useful for, as opposed to what the claim itself covers"); *Calif. Inst. of Tech.*, 59 F. Supp. 3d 974, 1000 (C.D. Cal. 2014) (finding that "Caltech's patents improve a computer's functionality by applying concepts unique to computing (like using a linear transform operation to encode data) to solve a problem unique to computing (data corruption due to noise)"); *Helios Software, LLC v. SpectorSoft Corp.*, No. 12-081, 2014 WL 4796111, at *17 (D. Del. Sept. 18, 2014) (upholding patents "drawn to remotely monitoring data associated with an Internet session and controlling network access"); *AutoForm Eng'g GmbH v. Eng'g Tech. Assoc., Inc.*, No. 10-14141, 2014 WL 4385855, at *2 (E.D. Mich. Sept. 5, 2014) (upholding patents pertaining to computer software for forming sheet metal into different objects); *Rockstar Consortium US LP, Inc. v. Mobilstar Techs., LLC*, Nos. 13-00894, 13-00900, 2014 WL 1998053, at *4 (E.D. Tex. May 15, 2014) (applying a pre-*Alice* analysis); *Card Verification Solutions, LLC v. Citigroup, Inc.*, No. 13-6339, 2014 WL 4922524, at *1 (N.D. Ill. Sept. 29, 2014) (upholding patent disclosing "methods for passing confidential information over an unsecured network with reduced risk of it being captured by an untrusted party").

in the realm of computer networks." *Id.* at 1257. In finding that the narrow application of the patent-at-issue allowed it to pass muster under § 101, the Federal Circuit noted that those claims stood apart from others that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.'" *DDR*, 773 F.3d at 1257.

Unlike the *DDR* patent, the '090 Patent's claim 1 does not "overcome problems specifically arising [in] computer-based communication networks," as Plaintiff contends. *See* Pl.'s Resp. at 11. Plaintiff cannot identify any such problems that claim 1 solves, much less how the claim allegedly solves them. *See* '090 Patent at 8:66-9:11; Pl.'s Resp. at 11-12. Rather, claim 1 merely implements an age-old abstract practice on a computer network and is, thus, much more analogous to patents like those invalidated in *buySAFE* and *Accenture*. *See DDR Holdings*, 773 F.3d at 1256 (stating that these and other Federal Circuit cases involved claims "directed to nothing more than the performance of an abstract business practice on the Internet or using a conventional computer"); *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1351 (Fed. Cir. 2014) (third party guarantee of a sales transaction over a communications network not patentable); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1338-39 (Fed. Cir. 2013) (insurance transaction information housed and communicated across generic computer components not patentable).

Finally, Plaintiff argues that the "recited system" is "not a generic computer or component" because it is "for customizing a product according to a user's preferences…" Pl.'s Resp. at 13. This statement directly contradicts Plaintiff's earlier statement that "[t]he invention recited in Claim 1 . . . deals not so much with product configuration as it does with receiving, storing, and transmitting specific information over a computer-based network." *Id.* at 9. Plaintiff

6

cannot have it both ways. Neither of these arguments is sufficient to save claim 1 and merely combining them does nothing to distinguish the claim from analogous claims that have been held invalid under § 101. In sum, the elements of claim 1, considered both individually and as an ordered combination, must amount to more than an abstract idea with instructions to "apply it" on a computer. *Alice*, 134 S. Ct. at 2355. As explained here and in Defendant's opening brief, they do not. *See DDR Holdings*, 773 F.3d at 1256 ("[A]fter *Alice,* there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.").

### C. Plaintiff's Invocation Of "Novelty" Fundamentally Misunderstands The Eligibility analysis.

Plaintiff argues throughout its response that Defendant has attempted to replace the eligibility analysis with a novelty analysis. But Defendant is not contending that claim 1 should be held unpatentable under § 101 because it is not novel. An abstract idea may be novel (for example, a previously unknown algorithm, as in *Benson*) or decades-old (for example, the concept of mitigating settlement risk, as in *Alice*). What matters to eligibility is not whether the claim recites a novel concept, but whether the claim, at its heart, recites "an idea, having no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). Moreover, consideration of whether additional computer technology limitations are "well-understood," "routine," "conventional," or "previously known to the industry" is not a "novelty" analysis—it is a patent eligibility analysis required by Supreme Court precedent. *See Alice*, 134 S. Ct. at 2359 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)).

### D. Plaintiff Has Not Raised Any Legitimate Claim Construction Issues Relevant To Patent Eligibility.

Plaintiff also argues that there are "factual" and claim construction disputes preventing the Court from reaching the merits of Defendant's motion at this stage of the case. Pl.'s Resp. at 14-16. Again, Plaintiff is incorrect. As stated in Defendant's opening brief and in the letter briefs submitted by the parties in the *Honda* case, there is no plausible construction of claim 1 that could bring it within the realm of patent eligible subject matter. *See* Def.'s Mot. at 11; *see also* C.A. No. 2:15-cv-1877-JRG-RSP, Dkt. No. 65-1 (letter briefs) at 4-6. Tellingly, Plaintiff speculates that the construction of certain claim terms "will likely impact" the patent eligibility analysis—yet Plaintiff offers no actual claim constructions that it contends will bring claim 1 within the realm of patent eligible subject matter. And Plaintiff fails to provide any explanation whatsoever as to how the construction of these terms will have any impact on the eligibility analysis. Plaintiff's letter brief in the *Honda* case regarding claim construction similarly offered no explanation or actual claim constructions to which the *Honda* defendants could even respond. C.A. No. 2:15-cv-1877-JRG-RSP, Dkt. No. 65-1 at 2-3. Further, the Qui Declaration is not persuasive or helpful. Dr. Qui merely parrots the language of the claim and then summarily concludes that it satisfies *Alice*. Indeed, Dr. Qui submitted similar boilerplate, circular declarations in the *RLT* case.[5] There, the court found that it "need not look beyond the pleadings in assessing patent-eligibility" and did not consider the Qui declarations. *Rothschild Location Techs.* at **6-7. The conclusion should be the same here, as the Qui declaration does not aid in weighing the eligibility of claim 1 nor does it suggest that expert testimony is needed to understand the claim before eligibility under § 101 and *Alice* can be considered.

The holding in the *RLT* case also instructs against delaying resolution of the eligibility issue to await a full claim construction proceeding. In that case, the court made clear that "claim

---

[5] *See* Case No. 6:15-cv-682, Dkt. Nos. 21-2 and 66-1 (Declaration and Supplemental Declaration of Dr. Fang Qui). The Qui Declarations are attached for the Court's convenience as Exhibits A and B hereto, respectively.

8

construction is not an inviolable prerequisite to a validity determination under § 101," particularly when there is no claim term that, when properly construed, would impact the analysis. *Rothschild Location Techs.* at \*7.  The court further noted that "to the extent a patentee contends a full claim construction proceeding is necessary prior to determining validity, it is the burden of the patentee to come forward and specifically identify the claim terms and proposed constructions that would affect the § 101 inquiry." *Id.*  Like RLT, Plaintiff here has failed to provide any proposed constructions whatsoever, and as in the *RLT* case, this Court should not delay consideration of patent-eligibility for a fruitless claim construction effort. *See id.* at \*8 (stating that for the purposes of the § 101 motion, the Court would "construe claims in a manner most favorable to [RLT].").

    **E.**  **The Court Recently Rejected Many of Plaintiff's Same Conclusory Arguments in the RLT case.**

In the *RLT* case, the court invalidated claims of another of Mr. Rothschild's patents under 35 U.S.C. § 101 after considering many of the same arguments that Plaintiff raises here.  For example, RLT argued that the patent was "directed to a specific purpose: 'to retrieve an address that is electronically stored in a second GPS device, often in incompatible format, and to have the address entered into the user's GPS device without having to manually enter it.'" *Id.* at \*9 (quoting RLT's Resp. to Mot. to Dismiss). RLT further contended "that the purpose of the invention is not abstract because it is directed to 'a specific problem which exists solely in the realm of electronic GPS devices.'" *Id.* at \*11 (quoting the same). The Court rejected these arguments and found that RLT's claims were directed to "a well-understood, fundamental concept of retrieving and sending data along with the requirement that it be performed between two 'positional information devices' [i.e., in a specific manner]." *Id.* at \*10. Plaintiff makes a similar argument here that should also be rejected, contending without support that "[t]he system,

9

as recited, operates in a specific way, performing specific functions, to overcome problems specifically arising (sic) computer-based communication networks." Pl.'s Resp. at 12.

RLT also argued, as Plaintiff does here, that the validity of Mr. Rothschild's patent was supported by generic computer limitations. The Court was not persuaded by RLT's recitation of a "server" and a "positional information device" as meaningful limitations. *Id.* at *9. Plaintiff's reliance here on a "remove server" and "first communication module" should be similarly rejected. Pl.'s Resp. at 13. The Court further found that "receiving . . ., retrieving . . ., and transmitting . . . by no means 'transform[s] a general purpose' [] device 'into a specific machine.'" *Rothschild Location Techs.* at *14 (quoting *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015)). Here, as in the *RLT* case, the storing, transmitting, and other generic computer elements of claim 1 "simply relate to ease, accuracy, and efficiency benefits achieved when any fundamental or well-known concept is implemented on a computer device" and "[e]ach benefit is a natural result of a computerized device . . . rather than a human, and is accordingly insufficient to confer patentability." *Rothschild Location Techs.* at *11 (citations omitted).

The Court should discard Plaintiff's same arguments in this case. Like the claims of Mr. Rothschild's patent in the *RLT* case, claim 1 of Mr. Rothschild's '090 Patent "recites precisely what *DDR* cautioned against: a broad and generic practice known from the [pre-computer] world along with the requirement to perform it on a [computer]." *Rothschild Location Techs.,* at *10.

### III. CONCLUSION

For all of these reasons and those stated in Defendant's opening brief, the Court should grant Defendant's motion and hold that claim 1 of the '090 Patent fails to satisfy the statutory requirements of 35 U.S.C. § 101.

| | |
|---|---|
| Dated: April 7, 2016 | */s/ Jason R. Mudd*<br>Jason R. Mudd<br>Eric A. Buresh<br>Albert F. Harris, III<br>ERISE IP, P.A.<br>6201 College Blvd., Suite 300<br>Overland Park, Kansas 66211<br>(913) 777-5600<br>Fax: (913) 777-5601<br>jason.mudd@eriseip.com<br>eric.buresh@eriseip.com<br>al.harris@eriseip.com<br><br>Clyde Moody Siebman<br>Siebman Burg Phillips & Smith LLP<br>300 N Travis St<br>Sherman, TX 75090<br>(903) 870-0070<br>clydesiebman@siebman.com<br><br>*Attorneys for Defendant*<br>*Ford Motor Company* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 7, 2016.

                                                  */s/ Jason R. Mudd*
                                                  Jason R. Mudd